## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW MEXICO

DENISE LOPEZ,

        Plaintiff,

v.                                      Civ.  No. 04-362 JH/DJS

MESA VISTA INDEPENDENT SCHOOL
DISTRICT, JOE GURULE, in his Official and
Individual Capacities, and MICHAEL D. CHAVEZ,
in his Official and Individual Capacities,

        Defendants.

### MEMORANDUM OPINION AND ORDER

        This matter is before the court on Defendants' *Motion for Summary Judgment* [Doc. No. 31]. The primary issue raised by the motion is whether there are any genuine issues of material fact for trial.  After considering the facts, the law, and the parties' arguments, the Court concludes that the motion should be granted, and summary judgment should be entered in favor of Defendants on all of Plaintiff's claims.

### FACTUAL AND PROCEDURAL BACKGROUND

        The following facts are undisputed.  In 1996, Defendant Mesa Vista Independent School District ("MVISD") hired Plaintiff Denise Lopez ("Lopez") as a second grade teacher at Ojo Caliente Elementary School, and she continued in that capacity for the next three years.  Defendant Joe Gurule ("Gurule") was the school principal at Ojo Caliente Elementary School and Lopez's  immediate supervisor.  In accordance with the employment contracts in force between Lopez and MVISD during this time, her employment was subject to reassignment if the need arose.

        In May of 1999, MVISD offered Lopez a position as the District-Wide Elementary School

Counselor. Lopez's supervisors were the three elementary school principals, including Gurule, and again, her employment was subject to reassignment. Lopez continued in that position until May 29, 2001, when she was temporarily reassigned to be the seventh through tenth grade counselor at Mesa Vista Middle/High School. At the same meeting at which it voted to reassign Lopez, the MVISD School Board, acting upon the recommendation of its Superintendent, also reassigned five other employees to new positions in the school district. These included Fidelia Jaramillo, Lopez's mother, and Diana Jaramillo, Lopez's sister. Gurule made no recommendations to the School Board regarding the reassignments.[1] The record contains no evidence as to the reason the School Board voted to transfer Lopez or the other five employees. However, Lopez's reassignment was short-lived. Just two months later, on July 31, 2001, Superintendent Vernon Jaramillo ("Superintendent Jaramillo") informed Lopez that her prior reassignment was "null and void," and that she should again report for duty as the District-Wide Elementary Counselor for the 2001-2002 school year. Lopez resumed those duties, and again her employment contract explicitly provided that she could be reassigned if the need arose. On April 30, 2002, MVISD again offered Lopez the same job for 2002-2003, District-Wide Elementary Counselor, subject to possible reassignment. On May 15, 2002, Lopez accepted the position. However, in a letter dated July 19, 2002, Lopez asked for a one-year leave of absence without pay for the purpose of educational advancement. According to her letter,

---

[1] Lopez attempts to dispute this fact by asserting that Gurule had a familial or other close personal relationship with two of the three School Board members that voted for her reassignment, though the it is unclear to what degree her assertions are based upon personal knowledge, as opposed to speculation and hearsay. By Affidavit, Gurule disputes Lopez's contention as to the nature of his relationship with the two members of the School Board. Furthermore, having a relationship with Board members and making a recommendation to the Board regarding the reassignments are two different matters, and there is no admissible evidence demonstrating that Gurule made such a recommendation.

Lopez planned to spend the year as a counselor with the Jemez Mountain School District.  MVISD denied Lopez's request for educational leave.  Despite the denial of her request, Lopez accepted the position with the Jemez Mountain School District, where she worked for the 2002-2003 school year. Lopez then returned to MVISD for the 2003-2004 school year as District-Wide Elementary Counselor.

These events took place against the backdrop of local politics surrounding MVISD.  Lopez and Superintendent Jaramillo are related, and she has testified that she believes him to be her third or fourth cousin.  Vernon Jaramillo was the Superintendent for MVISD during the 1996-2001 school years.  On February 6, 2001, MVISD held an election for members of the school board.  Two newly elected board members, Alfonso Chacon and Joe L. Trujillo, started in their positions on March 1, 2001. Lopez did not vote for the newly elected board members because she believed that they did not support Superintendent Jaramillo, and she had spoken to her family members about supporting their opponents.  Lopez also believes that it was widely known in the community that she supported those candidates for the board who she believed would, in turn, support Superintendent Jaramillo.  The composition of the new school board was Cornelio Lopez, Alfonso Chacon, Jr., Joe L. Trujillo, William Romero and Guadalupe Moya ("the Board").  The newly composed board served three months and met four times before reassigning the six employees.

On April 1, 2004, Lopez filed her Complaint for Damages ("Complaint").  Plaintiff alleged that the Defendants violated her constitutional, statutory and state law rights. Count I alleges that Defendants breached their contract with Lopez, and Count II alleges a breach of the implied covenant of good faith and fair dealing.  In Count III, Lopez contends that Defendants violated her First Amendment right to freedom of speech.  Count IV alleges that Defendants violated Plaintiff's First

and Fourth Amendment right to political association.  In Count V, Lopez alleges that the Defendants violated her right to equal protection of the law under the Fourteenth Amendment, while in Count VI she alleges that Defendants, while acting under color of state law, violated her civil rights in contravention of 42 U.S.C. § 1983.  Finally, in Count VII Lopez asserts a claim for constructive discharge.  In the prayer for relief, Plaintiff requests compensatory damages, punitive damages, and interest.

However, the scope of this case has narrowed considerably since Lopez filed her Complaint. In response to Defendants' Motion for Summary Judgment, Lopez agreed to dismiss all of her claims against Defendant Michael D. Chavez.  In addition, Lopez stipulated to the dismissal of her breach of contract and her breach of implied covenant of good faith and fair dealing claims, her Fourteenth Amendment due process claim[2], and her request for punitive damages. Finally, Lopez agreed to dismiss her freedom of speech claim against Defendant Joe Gurule ("Gurule").  Therefore, Lopez's remaining claims are her First Amendment right to freedom of speech, First Amendment right to political association, Fourteenth Amendment right to equal protection, and constructive discharge claims against Defendant Mesa Vista Independent School District ("MVISD"), as well as her First Amendment right of association, Fourteenth Amendment equal protection clause, and constructive

---

[2] The Court is somewhat confused by this statement.  Lopez did not explicitly plead a Fourteenth Amendment due process claim, but only a claim of violation of the Fourteenth Amendment's equal protection clause.  Lopez did plead a claim for constructive discharge, which is most often seen in the context of alleged violations of Title VII of the Civil Rights Act of 1964. However, as described in further detail below, a public employee who claims to have a property right in her continued employment but who also claims to have been constructively discharged without proper procedural due process may assert a claim for violation of her due process rights. The parties have not addressed this inconsistency, but their briefs indicate that they all understand Lopez's constructive discharge due process claim not to be waived.  Accordingly, the Court will address this specific claim, but no other possible claim for violation of Lopez's due process rights.

discharge claims against Gurule.

## <u>DISCUSSION</u>

A municipality or other arm of the state, such as a school district, may be liable under Section 1983 only if it took "action pursuant to official municipal policy of some nature [that] caused a constitutional tort." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). In *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), the Supreme Court further developed the rule expressed in *Monell*, stating "[t]he 'official policy' requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Id*. at 479. The Court recognized, however, that "municipal liability may be imposed for a single decision by municipal policy makers under appropriate circumstances." *Id*. at 480. But the Court emphasized that "[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Id*. at 481. Nonetheless "[i]f the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government 'policy' as that term is commonly understood." *Id*.

A policy is a statement, ordinance, regulation or decision officially adopted and promulgated by the board. *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir. 1996). A custom is the existence of a continuing widespread, persistent pattern of misconduct that has been so permanent and well settled as to have the effect and force of law. *Monell*, 436 U.S. at 691. Policy or custom can be identified in any of three ways: (1) an express policy that, when enforced, causes a constitutional deprivation, (2) a widespread practice that, although not authorized by written law or

express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) an allegation that the constitutional injury was caused by a person with final policy making authority. *Boyer v. Board of County Comm'rs of County of Johnson County*, 922 F. Supp. 476, 488 (D. Kan. 1996) (citing *Monell*, 436 U.S. at 690).  Lopez is relying on the last theory and asserts that the School Board's decision to reassign her was a policy that injured her.

In providing further contours to the rules regarding municipal liability, the Supreme Court has noted that "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 404 (1997).  Specifically, the Tenth Circuit has held that "[a] plaintiff suing a municipality under section 1983 for the acts of one of its employees must prove: (1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Oklahoma County Bd. of County Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998) (citing *Monell*, 436 U.S. at 694).

In addition, Defendant Gurule has asserted the defense of qualified immunity to Lopez's claims under Section 1983.  Once a moving party raises the defense of qualified immunity, the nonmoving party must (1) assert facts which, if true, would constitute a violation of a constitutional right, and (2) demonstrate that the "right was clearly established at the time such that a reasonable person in the [movant's] position would have known that [the] conduct violated the right." *Garramone v. Romo*, 94 F.3d 1446, 1449 (10th Cir. 1996) (citations omitted); *see also Saucier v. Katz*, 533 U.S. 194, 201-02 (2001).

Even assuming that the School Board's decision to reassign Lopez was an act of official

6

policy, MVISD and Gurule must still prevail because, as explained below, Lopez has failed to demonstrate the infringement of her constitutional rights.

I.      **FIRST AMENDMENT CLAIMS**

A.      <u>**First Amendment right to freedom of speech**</u>

A public employer may not retaliate against an employee for exercising her constitutionally protected right of free speech. *Dill v. City of Edmond, Okl.*, 155 F.3d 1193, 1201 (10th Cir. 1998). The Tenth Circuit employs the *Pickering* test to evaluate whether the action of a public employer impermissibly infringes on an employees free speech rights. *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731 (1968). As explained in *Martin v. City of Del City*, 179 F.3d 882, 886 (10th Cir. 1999):

> Our initial inquiry under [the *Pickering*] test is to determine whether the public employee's speech at issue touches upon matters of public concern. If this is so, the court then must balance the interest of the public employee in making the statement against the government-employer's interest in promoting the efficiency of the public services it performs through its employees. If such balancing favors the plaintiff, she next must show that the constitutionally protected expression was a motivating factor in the adverse employment decision. Last, if the plaintiff has satisfied the above elements, the burden shifts to the employer to show by a preponderance of the evidence that it would have made the same employment decision even in the absence of the protected conduct.

(internal citations omitted). The first two questions are questions of law, while the latter two are questions of fact. *Martin*, 179 F.3d at 886.

To determine whether speech touches on a matter of public concern, the Court must determine whether it can be fairly considered as relating to any matter of political, social, or other concern to the community. *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684 (1983). This

requires an analysis of the content, form and context of a given statement, as revealed by the whole record. *Id.* at 147-48. To be protected speech, the expression must sufficiently inform the issue as to be helpful to the public in evaluating the conduct of government. *Withiam v. Baptist Health Care of Okl., Inc.*, 98 F.3d 581, 583 (10th Cir. 1996).

First, Lopez asserts that the School Board reassigned her because she supported Superintendent Jaramillo, as well as those candidates for the School Board who Lopez believed would continue Jaramillo's employment as Superintendent. Lopez has presented no evidence regarding the specifics of her speech on this topic; she has testified that the political alignments on the School Board were "common knowledge" in the community, and that her protected speech was her "support" of two candidates for the School Board.  Lopez Depo. at pp. 26-27, 110.  The only evidence regarding that speech is Lopez's testimony that she spoke to family members about the election, but otherwise spoke to no other members of the community.  Id. at pp. 28-29.  Lopez provides no details as to the content, form, or context of her speech on that issue.  Second, Lopez claims that she spoke out by reporting a teacher for violating security measures on a state achievement test.  Id. at pp. 75-76.  Once again, Lopez has failed to provide evidence regarding what here statements were, when she made them, and to whom they were made.  Third, she claims that she spoke out against the mistreatment of students by a teacher, but again does not provide any details surrounding her speech.

Simply stated, Lopez has failed to come forward with sufficient evidence to withstand summary judgment on her freedom of speech claim because she does not provide sufficient information about the content, form, and context of any of her statements for the Court to properly evaluate whether they may be fairly considered as relating to any matter of political, social, or other

concern to the community.  Lopez does not point to any particular statements she has made, tell us to whom she made them, or explain their significance in any way.

Furthermore, with regard to her alleged statements concerning Superintending Jaramillo, what Lopez has alleged that she expressed could more accurately be described as support rather than speech.  Even if it were speech, Lopez's statements do not appear to constitute a matter of public concern.  Her speech is a general support of the policies and initiatives of Superintendent Jaramillo.  Lopez's statements are not specific enough as to be helpful to the public in evaluating the conduct of a government official.  *Connick*, 461 U.S. at 147-48.  In determining whether speech is of public concern, "it is not always enough that its subject matter could in [certain] circumstances, [be] the topic of a communication to the public that might be of general interest. What is actually said on the topic must itself be of public concern."  *Koch v. City of Hutchinson*, 847 F.2d 1436, 1445 (10th Cir. 1988) (en banc) (internal quotations omitted; brackets in original).  Here, Lopez has submitted insufficient evidence of what she actually said.

Furthermore, even if Lopez had demonstrated that her speech touched upon a matter of public concern, her claim still would fail because she must also demonstrate that her protected speech on that matter was a motivating factor for her reassignment. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). Although retaliation against protected speech need not be the only factor leading to the adverse employment decision, a plaintiff must prove that it played a substantial role. *Id*.

A review of the deposition testimony and other evidence on file shows there is no evidence, only speculation, as to why the School Board reassigned Lopez.  The evidence demonstrates that Lopez knew she could be reassigned if the need arose, and that Lopez merely believed she was

reassigned because of her political association with Superintendent Jaramillo. Furthermore, the record contains no evidence that any member of the School Board even had knowledge of any of Lopez's speech. In short, there is simply no evidence to support an inference that the School Board reassigned Lopez because she spoke to family members about voting for certain candidates, or because she reported a teacher for testing security violations, or because she spoke out about some unspecified abuse of a student.

Because she has failed to demonstrate that she spoke out on a matter of public concern and she has failed to demonstrate a causal connection between her speech and her reassignment, the Defendants are entitled to summary judgment on Lopez's claim for violation of her right to freedom of speech under the First Amendment.

**B.      First Amendment right to political association**

Lopez also asserts a claim for violation of her First Amendment right of association. The Supreme Court has recognized two types of association protected by the First Amendment: 1) intimate human relationships; and 2) expressive associations for the purpose of conducting activities, such as speech, assembly, and exercise of religion, that are protected by the First Amendment. *Roberts v. United States Jaycees*, 468 U.S. 609, 617-18, 104 S.Ct. 3244, 3249 (1984). Though Lopez believes that she and Superintendent Jaramillo are third or fourth cousins, she does not allege that Defendants have retaliated against or deprived her of her right to an intimate association with him. Rather, Lopez asserts because she had a political affiliation with or political loyalty to Superintendent Jaramillo, Defendants reassigned her.

The First Amendment protects the right to associate for the purposes of engaging in those activities protected by the First Amendment–speech, assembly, petition for the redress of grievances,

and the exercise of religion. *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 678 (2000). Public employees

may not be discriminated against based upon their political beliefs, affiliations, or non-affiliation unless

their work requires political allegiance. *Good v. Board of Cty. Commrs of Shawnee, Ks.*, 331 F.

Supp. 2d 1315, 1326 (D. Kan. 2004).

When the free speech and free association claim are identical or closely related, the Court

should apply the *Pickering* test. *Beach v. City of Olathe, Ks.*, 185 F. Supp. 2d 1229, 1237 (D. Kan.

2002); *Schalk v. Gallemore*, 906 F.2d 491, 498 n.6 (10th Cir. 1990). Thus, the initial inquiry is

whether Lopez's association with Superintendent Jaramillo touched upon matters of public concern.

Once again, Lopez's association with Superintendent Jaramillo was to give him general support for

his policies and initiatives. As explained above, Lopez's act of association and support of

Superintendent Jaramillo simply does not meet the public concern requirement.

Moreover, as previously discussed, the evidence does not demonstrate that Plaintiff was

reassigned because of her association with Superintendent Jaramillo. *Jantzen v. Hawkins*, 188 F.3d

1247, 1251 (10th Cir. 1999) (plaintiff must establish a genuine dispute of fact that political affiliation

and/or beliefs were substantial or motivating factors behind the adverse employment action). Plaintiff

argues that of the six reassigned employees, three were supporters of the Superintendent. The record

contains no facts about the remaining three employees or the circumstances surrounding their

reassignments. More importantly, as described above, Lopez agreed and knew she could be

reassigned if the need arose. Assuming no performance issues, there are many reasons for

reassignment other than support for the Superintendent. Thus, no reasonable inference of retaliation

based on political association may be drawn from the scant evidence on record. Lopez simply has

not met her burden. There is no evidence in the record regarding any political motivation behind her

reassignment. Further, there was no campaign or election for the position of Superintendent. The evidence demonstrates that Lopez merely voted for school board candidates she thought would be loyal to Superintendent Jaramillo and continue his employment in that position. Therefore, it can not be reasonably inferred that the School Board's action of reassigning the Lopez was motivated by their disregard for her First Amendment rights.

Accordingly, Defendants' motion for summary judgment on Lopez's freedom of association claim will be granted.

## II.      EQUAL PROTECTION CLAIM

The equal protection clause is triggered when the government treats someone differently than another who is similarly situated. *Buckley Constr., Inc. v. Shawnee Civic & Cultural Dev. Auth.*, 933 F.2d 853, 859 (10th Cir. 1991) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). The equal protection clause prohibits not only discrimination against victims within an identified classification or group, but also where the plaintiff alleges an element of intentional or purposeful discrimination so as to invoke the clause to protect an individual claim. *Bartell v. Aurora Public Schools*, 263 F.3d 1143, 1148 (10th Cir. 2001).

Lopez argues that her claim is based on the "class of one" doctrine recognized by the Supreme Court in *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  This type of equal protection claim is brought by a class of one, where the plaintiff alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *Mimics, Inc. vs. Village of Angel Fire*, 394 F.3d 836 (10th Cir. 2005) (citing *Willowbrook*, 528 U.S. at 564). To succeed on such an equal protection claim, Lopez must prove that

she was singled out for persecution due to some animosity.[3]

The Tenth Circuit has held that in order to show a constitutional violation under the class-of-one theory, Lopez must establish two elements: (1) that the Defendants acted with discriminatory intent; and (2) that the Defendants treated Lopez differently from others who are similarly situated without a rational basis for doing so.  *Bartell*, 263 F.3d at 1149.  To establish discriminatory intent, Lopez must show that the Defendants' actions were a spiteful effort to harm Lopez for reasons wholly unrelated to any legitimate state objective.  *Id*.

Again, Lopez fails to come forward with sufficient proof to support her claim.  As stated above, there is insufficient evidence to support an inference that MVISD acted with discriminatory intent when it temporarily reassigned her.  In fact, the record is devoid of any evidence (other than Lopez's own speculation) as to why Superintendent Jaramillo recommended and the School Board took that course of action.  Furthermore, Lopez was one of six employees who were reassigned at the same School Board meeting.  While there is evidence that three of those (Lopez, her mother, and her sister) were supporters of Superintendent Jaramillo, the record contains no evidence as to the political opinions of the other three employees or the reasons for their reassignments.  It may be that those three employees were aligned in political opposition to Lopez and her family members.  Furthermore, Lopez has not come forward with evidence to show that MVISD treated any similarly situated employee differently than Lopez.  In failing to provide specific facts about other employees

---

[3] Courts have recognized that it is always possible for persons aggrieved by government action to allege, and almost always possible to produce evidence, that they were treated differently from others, with regard to everything from zoning to licensing to speeding to tax evaluation. Thus, the concept of a class of one equal protection claim should be carefully circumscribed to prevent it from becoming a catch-all federal cause of action for review of almost every executive and administrative decision made by state actors. *Jennings v. City of Stillwater*, 383 F.3d 1199, 1210-1211 (10th Cir. 2004).

who were not reassigned, Lopez has not shown that she was similarly situated to those employees.

There is a similar dearth of evidence to support the equal protection claim against Defendant Gurule. Even assuming that there were evidence of discriminatory intent by Gurule in his interactions with her, Lopez has failed to come forward with evidence that he treated similarly situated employees differently. Her only evidence in this regard is the hearsay statement that one of the other elementary school counselors told Lopez that Gurule had never treated her the way he was treating Lopez. This statement is inadmissible hearsay, and the Court may not consider it.

Because Lopez has failed to come forward with evidence of discriminatory motive and evidence regarding the treatment of similarly situated employees, she has not shown that a genuine issue of material fact remains for trial. Accordingly, the Defendants' motion for summary judgment on Lopez's equal protection claim will be granted.

## III.   CONSTRUCTIVE DISCHARGE CLAIM

The Tenth Circuit has held that a public employee's constructive discharge from a position in which the employee has a protected property interest may be actionable under 42 U.S.C. § 1983. *Bailey v. Kirk*, 777 F.2d 567, 579 (10th Cir. 1985). To determine whether Lopez has a viable cause of action under Section 1983, first the Court must determine whether Defendants deprived Lopez of a protected property interest. Here, it appears that Defendants acknowledge that Lopez had a protected property interest in continued employment with MVISD, as Defendants do not dispute that fact. Defendants contend, however, that Lopez was not constructively discharged, but rather she voluntarily resigned. If Lopez resigned of her own free will, even as a result of Defendants' actions, then she voluntarily relinquished her property interest in her employment, and Defendants did not deprive her of property without due process of law. *See Parker v. Board of Regents of Tulsa Jr.*

14

*College*, 981 F.2d 1159, 1161-62 (10th Cir. 1992).

To determine whether a jury question exists as to the voluntariness of Lopez's resignation, the Court considers the totality of the circumstances under an objective standard. *See Parker*, 981 F.2d at 1162; *accord Hargray v. City of Hallandale*, 57 F.3d 1560, 1570 (11th Cir. 1995). At the outset, the Court must determine if Lopez has established that her resignation was involuntary based upon a reasonable person test. *See Maez v. Mountain States Tel. and Tel., Inc.*, 54 F.3d 1488, 1502 (10th Cir.1995). Constructive discharge occurs when a reasonable person in the employee's position would view the working conditions as intolerable. That is to say the working conditions, when viewed objectively, must be so difficult that a reasonable person would feel compelled to resign. *Woodward v. City of Worland*, 977 F.2d 1392, 1401 (10th Cir. 1992). A plaintiff's subjective views of the situation are irrelevant. *Irving v. Dubuque Packing Co.*, 689 F.2d 170, 172 (10th Cir. 1982), *overruled on other grounds*, 814 F.2d 1489, 1495 n.4 (10th Cir. 1987); *accord Clowes v. Allegheny Valley Hospital*, 991 F.2d 1159, 1162 (3d Cir. 1993). Essentially, a plaintiff must show that she had "'no other choice but to quit.' " *Woodward*, 977 F.2d at 1401 (quoting *Irving*, 689 F.2d at 172) (emphasis in original); *accord Peterson v. Sweetwater County School Dist. No. 1*, 1997 WL 312420 at *2 (10th Cir. 1997) (unpublished).

In this case, Lopez offers evidence of the following in support of her claim for constructive discharge:[4]

• As her immediate supervisor, Gurule has at times failed to give Lopez timely evaluations in accordance with MVISD's policies and procedures, although it is not clear when or how

---

[4]Gurule disputes many of these facts. However, on a defendant's motion for summary judgment, the Court takes the facts in the light most favorable to the plaintiff.

often that has occurred, or what affect that might have had on Lopez or her career.

- On one occasion, Gurule told Lopez that some teachers were complaining about her work, but when pressed at a follow-up meeting, he admitted that no teachers had complained; rather, he was the one with concerns.

- On another occasion, Lopez was called away on an emergency to the El Rito campus. She tried to contact Gurule to tell him where she was going, but when she was unable to locate him she left him a message. While Lopez was at El Rito, an employee there told her that Gurule had called to look for her and was very upset because she had left campus without telling him. Later Lopez asked Gurule about this, and his response was that he was not angry, that he had not been looking for her, and that the El Rito employee was lying.

- Former defendant Michael Chavez ("Chavez"), who was Principal at Mesa Vista Middle and High School and who was never Lopez's supervisor, called a meeting with Lopez and two other counselors where he informed them that community members were complaining about a lack of confidentiality on students' personal issues, although he did not provide any further information on the subject.

- On one occasion, Chavez called Lillian Griego at the Central Office and said, "The counselor is saying that you're not doing your job."

- Gurule scheduled staff meetings while Lopez was on assignment to El Rito, making it more difficult for her to carry out her responsibilities as testing coordinator.

- Gurule questioned Lopez regarding her times of arrival at and departure from work, as well as regarding the number of professional leave days she took. The record contains no information as to how often this occurred, or as to Gurule's exact words or tone of voice.

16

- Gurule failed to give Lopez certain memos regarding school activities, including the MVISD safety handbook.

- When Lopez reported another teacher for breaching security on a state test, Gurule was upset and failed to support Lopez's actions.

- In January of 2002, interim Superintendent Nelson Gonzales ("Gonzales") reprimanded Lopez for unauthorized use of the telephone, even though she explained that she had used the phone in connection with her duties as testing coordinator.  Gonzales forced Lopez to ask him for permission every time she needed to use the phone to call the State Department of Education.  Every time Lopez asked for permission, Gonzales granted it.

- Lopez submitted memos to the Superintendent and the School Board regarding her grievances with Gurule, but no action was ever taken.

- MVISD denied Lopez's request for educational leave.

The foregoing, even when taken cumulatively and viewed in the light most favorable to Lopez, does not amount to a situation in which a reasonable person would have no other choice but to quit.  Rather, Lopez presents evidence of a series of relatively minor personnel conflicts and disputes that do not amount to an objectively intolerable situation.  Certainly, Lopez presents adequate evidence to suggest that she did not get along with Gurule.  However, under the standards set forth by the Tenth Circuit, the relatively minor incidents that Lopez describes do not rise to the level of a constructive discharge or a constitutional violation.  For example, in *Walker v. United Parcel Service of America, Inc.*, 2003WL22101491 (10th Cir. Sept. 11, 2003), the court held that supervisors' alleged conduct of constantly criticizing and disciplining delivery employee for minor infractions, refusing her requests to use the bathroom while out on delivery routes, suggesting that

employee urinate into a bottle while making deliveries, telling her that she need not use a dolly while making deliveries, and failing to take corrective action to discipline co-worker who made crude comment about her pregnancy did not amount to constructive discharge.  *See also Sanchez v. Denver Public Schools*, 164 F.3d 527 (10th Cir. 1998) (finding no constructive discharge where at a meeting principal introduced all new teachers except plaintiff, made ageist comments about plaintiff during the school year, threatened to put plaintiff on a performance improvement plan, and required plaintiff to bring a doctor's note every time she took sick leave, even though she did not require other teachers to do so).

Accordingly, Defendants' motion for summary judgment on the constructive discharge claim will be granted as well.

**IT IS THEREFORE ORDERED** that Defendants' *Motion for Summary Judgment* [Doc. No. 31] is **GRANTED**, and final judgment will be entered in favor of Defendants on all of Plaintiff's claims.

**UNITED STATES DISTRICT JUDGE**